# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 16, 2013

## STATE OF TENNESSEE v. BILLY WAYNE VESTAL

### Appeal from the Circuit Court for Marshall County
### No. 2012-CR-18     Stella Hargrove, Judge

### No. M2012-02483-CCA-R3-CD - Filed August 28, 2013

Appellant, Billy Wayne Vestal, entered a guilty plea to aggravated assault without a recommended sentence. Following the sentencing hearing, the trial court sentenced him to serve five years in the Tennessee Department of Correction ("TDOC"). Appellant challenges the sentence as being excessive. Upon our review, we discern no error and affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROGER A. PAGE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Donna Orr Hargrove, District Public Defender, Lewisburg, Tennessee; and Michael J. Collins, Assistant District Public Defender, Shelbyville, Tennessee, for the appellant, Billy Wayne Vestal.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts from the Sentencing Hearing

The facts underlying the offense in this case are set forth in the presentence report[1] as follows:

---

[1] A copy of the guilty plea submission hearing is not included in the appellate record. However, we conclude that the record before us is sufficient for meaningful appellate review. *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

[O]n or about [January 22, 2012], [appellant] did display a knife and put it to the throat of the victim, Phyllis R. Martin[,] and stated that he would kill her and cut her throat. [Appellant] stated to Officer Ragsdale that he did pull the knife on the victim. This incident was witnessed by [two witnesses].

The trial court conducted a sentencing hearing in this case on November 7, 2012. At the sentencing hearing, the trial court admitted the presentence report into evidence, and the State did not present any further proof. Appellant presented Justin Christmas, a corrections officer at the Marshall County jail, as a witness. Officer Christmas explained that appellant suffered from various health problems that made it difficult for him to care for himself. Appellant had to wear an adult diaper, which he needed assistance in changing. Officer Christmas testified that on two or three occasions, the diaper had leaked, causing a mess on the floor that required three to three and a half hours to clean up. Jail personnel would sometimes have to physically move appellant, and someone would have to stand near and assist him with showering. Appellant had problems with mobility and required a walker to move around. Officer Christmas stated that having appellant in the jail created a situation wherein personnel were called from their other duties to monitor and assist appellant.

On cross-examination, Officer Christmas acknowledged that appellant did not cause any trouble at the jail and was nice to the personnel. He denied knowing that appellant committed the aggravated assault with a knife while he was using his walker. Following Officer Christmas's testimony, the defense rested.

The State argued that the trial court should apply enhancement factor one because of appellant's extensive criminal history; enhancement factor nine due to appellant's use of a deadly weapon; and enhancement factor ten because appellant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(1), (9), (10) (2010 & Supp. 2012). Appellant argued that his criminal history was comprised of fourteen misdemeanors and were the type of crimes that one who suffered from post-traumatic stress disorder ("PTSD") would commit. Therefore, he asked the trial court to place little emphasis on enhancement factor one. Further, appellant urged the trial court to disregard enhancement factor nine because it was an element of the crime and factor ten because it was embodied by the nature of the crime itself.

Appellant advanced mitigating factors number eight, that he was suffering from a mental or physical condition that significantly reduced his culpability for the offense; and number thirteen, the "catch-all" provision, based on appellant's open guilty plea, which saved the court system time and money. Tenn. Code Ann. § 40-35-113(8), (13) (2010). Appellant offered medical records into evidence, which the trial court admitted, purporting to establish that appellant suffered from PTSD.

Before sentencing appellant, the trial court afforded him the opportunity to make a statement. In his allocution, appellant expressed remorse but blamed his conduct on his military training. He claimed that he felt threatened by the victim and that he pulled the knife because he feared the victim was going to hit him with a bottle.

After stating on the record that it considered the appropriate statutory factors, the trial court ruled as follows:

> [M]y calculation of the prior record of actual convictions for [appellant] number . . . 15. They are 15 misdemeanors.
>
> And I count at least 11 probation efforts toward [appellant]. . . .
>
> I think it is noteworthy to say that [appellant] had just gotten off of probation when he was arrested for this offense that we are here on . . . today. . . .
>
> It is also noteworthy, considering his prior record, that he was ordered to forfeit a weapon on . . . reckless endangerment, assault[,] and resisting. . . .
>
> We know that in this case that he had a knife.
>
> . . . .
>
> In considering what crimes would be against [a] person and would be somewhat of a violent nature, the aggravated assault was reduced to assault in 2010. He was convicted of assault in 1995. He was convicted of assault in 1992. He was convicted of reckless endangerment in 2010. And now on his plea to aggravated assault, he is, for the fifth time now, convicted of an assaultive offense, a crime against [the] person. And now he has moved up to a felony conviction.
>
> [A]s we sit here today, he turned 65 this August.
>
> We talked a little bit about his efforts and whether he took advantage of what was out there, insofar as mental health treatment, because we talked a lot about PTSD that supposedly occurred from '67 to '70, although it is noteworthy to say that when he returned to Marshall County, his first offense that I am looking at wasn't until age 44. That is a little difficult to reconcile.

The Presentence report shows that when he pled to those three offenses, assault, reckless endangerment[,] and resisting in 2010, he was ordered to go to Centerstone for an assessment and ordered to follow up with their recommendations.

. . . .

The Court should consider and will consider the facts and circumstances surrounding this offense[] and the nature and characteristics of the criminal conduct involved.

. . . .

[I]t is [appellant's] contention that he did pull the knife, but he did not put it to her throat or threaten her.

That is contrary, of course, to what the victim says, in that he did draw the weapon and put it to her throat, put the blade to her neck, and said that he would kill her and cut her GD throat.

There is a discrepancy, which I always look for, in [appellant's] version. . . [T]hat might be a minor thing, but it is important to me, insofar as truth and honesty and straightforward dealing with the Court.

. . . .

While [appellant] has obviously some physical problems, he is able to get around, and he is able to carry a weapon, and he is able to draw that weapon.

. . . .

Insofar as expectations of rehabilitation, I don't – at 65, I don't see that. I don't see that that is possible. And I think the record bears that out.

Whether . . . it reasonably appears that [appellant] will abide by the terms of probation . . . [H]e is still committing crimes in Marshall County, and he has been on probation 11 times. So that is disturbing to the Court.

Whether . . . the interests of society are being protected from possible future criminal conduct . . . I think it does because [appellant] is mobile[,] and

-4-

he has a weapon.

He has had a loaded 20-gauge shotgun and now the knife.

Whether . . . a sentence of full probation would unduly depreciate the seriousness of the offense, the Court finds that it would. I think the record bears that out.

I think it is important to note that in Tennessee, case law tells us that providing an effective deterrence in and of itself would be a reason to deny full probation.

. . . .

The Court finds that the first enhancement factor is appropriate.

This [appellant] has a previous history of criminal convictions or criminal behavior . . . in addition to those necessary to establish the appropriate range.

. . . .

His behavior is escalating to a point that it is more violent and more dangerous to society and to victims.

Factor number 1, the Court gives great weight. . . .

. . . .

Insofar as number 9, the deadly weapon, the knife, is an element.[2]

I am reluctant to give number 10. . . . I think it is so close, though, with aggravated assault, that I should stay away from it.[3]

---

[2] A trial court may not apply enhancement factor nine (9), use of a deadly weapon, to a case in which the use of a deadly weapon is an element of the offense. *State v. Charles Haywood*, No. W2009-01994-CCA-R3-CD, 2010 WL 3489179, at *6 (Tenn. Crim. App. Sept. 7, 2010).

[3] "In general, . . . where a high risk to human life is inherent in the underlying conviction, enhancement factor (10) applies only if the defendant disregarded a high risk to the life of a person other than
(continued...)

. . . .

I don't think substantial grounds . . . exist to excuse or justify his criminal conduct, so I would not consider that factor.

[Appellant], because of youth or because of old age, lacked substantial judgment in committing the offense.

I don't find that that is a factor that is noteworthy or I should consider.

. . . .

Number 8, [appellant] was suffering from a mental or physical condition that significantly reduced his culpability. And again, from the record, I do not find that.

. . . .

Now, 13 is a catch-all: Any other factor consistent with the purpose of this chapter. And I guess that this Court should consider that there has been a diagnosis of PTSD.

. . . .

[F]rom observing him today, and from looking at this record, I will consider that as a catch-all factor, that there has been a diagnosis of PTSD somewhere down the road. . . .

. . . .

The Court will now sentence [appellant] to five years in the penitentiary as a Range I Standard Offender.

I really think [appellant] ought to go to special needs and serve that time.

---

[3](...continued)
the victim." *State v. Lance Sandifer*, No. M2008-02849-CCA-R3-CD, 2010 WL 5343202, at *20 (Tenn. Crim. App. Dec. 21, 2010) (internal citations omitted). The State did not allege that anyone other than the victim in this case was at risk of harm from appellant's attack. Thus, the trial court correctly declined to apply this enhancement factor.

Appellant now challenges the trial court's order, claiming that his "sentence is excessive and contrary to law."

## II. Analysis

### A. Standard of Review

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -210(b) (2010); Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2012). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010 & Supp. 2012).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2012); Tenn. Code Ann. § 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

A trial court should base its decision regarding alternative sentencing on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2010).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d, 273, 279 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

## B.  Appellant's Claim

Appellant argues that the weight that the trial court placed on enhancement and mitigating factors "did not comply with the 'purposes and principles' of the [Sentencing] [A]ct." However, as noted above, the trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citations omitted).

He further argues that "the punishment imposed does not fit the crime or the offender." The trial court noted fifteen prior misdemeanor offenses and eleven opportunities to serve suspended sentences. It further noted two convictions for misdemeanor assault, one conviction for misdemeanor assault that was reduced from felony-grade aggravated assault, and one conviction for reckless endangerment. Finally, the trial court noted the

circumstances of the instant crime and the escalating nature of appellant's offenses against the person. The record supports the trial court's ordering a five-year sentence in confinement.

Relying on *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991), appellant's final argument is that "scarce prison resources should enter into the sentencing evaluation for those convicted of violating the law." Appellant's reliance on *Ashby* is misplaced. *Ashby* did not purport to give *carte blanche* to a criminal who also has special physical or mental needs. Although appellant Ashby suffered from a heart condition that required medication and a pacemaker, his criminal record contained only one prior conviction for a nonviolent offense, and his convicted offense in the 1991 case was a drug offense, also nonviolent. *Id.* at 167, 170. Moreover, the supreme court found error in the trial court's sentencing appellant Ashby to incarceration on the sole basis of deterrence, not on the basis of his physical condition. *Id.* at 170.

However, in the instant case, appellant had a lengthy criminal history involving four prior offenses against the person. He violated a court order to forfeit weapons following his 2010 convictions by possessing a knife. He enjoyed eleven chances to avoid incarceration by receiving probation. He was given the opportunity in 2010 to receive an assessment and treatment for PTSD. The trial court's sentencing determination mentioned deterrence as a factor but also included expectations of rehabilitation, compliance with the terms of probation, protection of societal interests, and depreciation of the seriousness of the offense. We note that rather than excusing the criminal behavior of offenders who have extraordinary medical or mental health requirements, the special needs division of TDOC exists to accommodate those offenders who require such assistance. Considering the record as a whole, the trial court did not abuse its discretion by ordering appellant to serve a sentence of incarceration.

## CONCLUSION

Based on the record, the parties' briefs, and applicable case law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE